### No. 9273.

### SARVIS TIMBER COMPANY *v.* BITZER.

1. CONTRACT—*Verbal Construed.* Plaintiff having demanded a horse which was in possession of defendant, defendant produced and offered an animal, the identity of which plaintiff denied. Thereupon defendant directed plaintiff to take the horse and keep him, "until we find yours." To which plaintiff replied: "I will see if he is as good as my horse." Held a mere temporary arrangement, passing no title, and that defendant was entitled to recover the animal in replevin.

2. LARCENY. Plaintiff having removed and secreted the horse under the circumstances mentioned above, it was held on suit for malicious prosecution of plaintiff for larceny as bailee, that defendant had probable cause for the prosecution.

*Error to Routt District Court, Hon. H. P. Burke, Judge.*

*Department Two.*

Messrs. GOODING & GOODING, for plaintiff in error.

Mr. ARTHUR L. WESSELS, Mr. JOHN HIPP, Mr. WILLIAM H. GABBERT, for defendant in error.

Opinion by Denison, J.

THIS was a suit brought by the defendant in error, Bitzer, against The Sarvis Timber Company, plaintiff in error, for malicious prosecution. The plaintiff had a verdict for $1,583.33 and $2,000 exemplary damages. The first count

of the complaint was dismissed. The second was based on a criminal prosecution started by one Carpender, the superintendent of the Sarvis Timber Company, against Bitzer, charging him with larceny as bailee of a horse called "Dandy." The third count charged the company with maliciously bringing an action of replevin against Bitzer for the same horse.

The facts essential at present are as follows:

The company gave Bitzer the following receipt:

"October 18, 1913.

Mr. John S. Bitzer, Steamboat Springs, Colo.

Dear Sir: This is to certify that we have this day received three horses from Mr. Bitzer, two of which we are to use from this date to March 15, 1914, at a flat rental of $100.00, with the privilege of buying the complete outfit, consisting of team, wagon and harness, for $300.00, on November 1, 1913; the extra horse we are to have the use of without cost, or for his board.

Sarvis Timber Company,

By S. P. Carpender."

The "extra horse" referred to in the receipt was called "John." The others do not now concern us. When Bitzer wanted his horse back it could not be found among the company's horses. Plaintiff said, "Well, Mr. Carpender, I want to get my crop in; it is getting late and I must get my crop in. If you will give me my horse, I will buy another horse, and then I will get my crop in." Carpender said, "Well, Mr. Bitzer, I will loan you a team, if you want to put your crop in." Thereupon the defendant loaned plaintiff a team, which did not prove satisfactory to plaintiff, and another team, Louie and Monte, were substituted. Afterwards Carpender told plaintiff that they had found his horse, and the defendant offered him the horse Dandy as his horse. He said he was not his. He testifies that one of the defendant's men then offered him Dandy in place of his horse. He did not accept. They then unhitched one of the two horses, Louie and Monte, which had been loaned by the company

to him to get his crop because John could not be found, and put Dandy in his place, and drove to the company's office. Then there was conversation ending thus: Carpender said, "Well, he looks like your horse; he is the same size and color as your horse; you take that horse and keep him until we find your horse." Bitzer said, "I will see if he is as good as my horse."

Bitzer kept the horse Dandy for some time, and finally, when Carpender demanded him for the company, refused to deliver. The demand was made at a garage in Steamboat Springs. The horse was then behind the garage. Carpender looked for him, but did not find him. Bitzer intimated he was elsewhere, and when Carpender went to get him, Bitzer took the horse and drove him to a distant ranch and left him there. Carpender learned of this and thereupon consulted the attorney for the company, Mr. Gooding, detailed to him the history of the case, except that he did not tell him of the receipt above quoted, and under his advice, and the advice of Mr. Monson, the District Attorney, began criminal proceedings charging Bitzer with larceny as bailee, and a civil proceeding in replevin to recover the horse, which were the proceedings charged in the matter now before us as malicious.

The verdict is general upon both counts. There is no way in which we can distinguish between the damages on one count or the other.

It is obvious that Carpender did not, by his words last quoted, offer the horse Dandy in lieu of John or as satisfaction for any claim on account of the failure to deliver John, though Bitzer's reply that he would see if he was as good as John might be an answer to such an offer. Bitzer had, however, borrowed Louie and Monte "to get in his crop," because John was not found. He took Dandy in Louie's place to keep till John was found, if we go by what Carpender offered; to see whether he was as good as John, if we go by Bitzer's reply. But Carpender's offer and Bitzer's reply show no meeting of minds and no contract. There

is no evidence as to what was to be done in case John could not be found at all, or in case Dandy did or did not prove as good as John. The understanding of the parties must be deduced as well as we can from their circumstances, conduct and language. The only understanding that can be inferred or deduced from these sources, as shown by Bitzer's own testimony, is that Dandy was given into his possession as a loan to do his work until John was found, both parties expecting him to be found in a reasonable time. There is nothing to justify the presumption that the arrangement was permanent or other than a loan to enable Bitzer to "get in his crop."

The transaction passed no title, was in its nature temporary and required readjustment after a reasonable time, and was, therefore, revocable after a reasonable time and left the liability of the compny to account for the horse John exactly as it was before. Whether the company was liable at all for the horse John does not appear, but the question is not important.

It follows from what has been said that under the facts, so far as they appear in this record, the company was entitled to judgment in the replevin suit. This being so, it is impossible to say that there was not probable cause for the criminal prosecution.

The horse belonged to the company. The company was entitled to possession. Bitzer had refused to deliver. Carpender learned that he had deceived him as to the horse's location, had run the animal off, as soon as he could do so secretly, and hidden him. All this, appearing by Mr. Bitzer's own testimony, shows not only probable cause, but shows his actual guilt of larceny as bailee if he did not really believe that he had a legal right to the possession.

It follows that under the evidence in this case the defendant was entitled to a directed verdict.

The judgment of the District Court is reversed, with directions to dismiss the case.

Garrigues, C. J., and Scott, J., concur.